Wright, J.
This suit was'brought by defendants in error, plaintiffs below, against plaintiff in error, defendant below, upon a promissory note, of which the following is •a copy:
■■“$ 4,000.00.
“I promise to pay Martina Skidmore & Co., or bearer, the sum ofifour thousand dollars, ($4,000.00), twelve months after date, for value received. I also give a mortgage on the southern ranche, situated between the forks of the Tuolumne, fourteen miles southeast of Sonora, as security for payment of the above sum.
“James C. Hayes.
“ California, Sonora, 24th February, 1853.”
This note was given .in part payment for a California ranche. Four persons, Skidmore, Mm*phy, Furman, and ■Clark, had obtained posession of 640 acres of land in Tuolumne county. The first three had squatted, each on 160 acres, and Clark had brought out another squatter, and the four tracts adjoined, making an entire farm of 640 acres. In the latter part of 1852 Murphy and Clark came back to the states, for the purpose, as it seems, of purchasing stock to take out to the new country. Clark died the day after he returned to Ohio. After these two had left, the remaining two, Skidmore and Furman, undertook to sell the whole ‘.ranche with the personal property to Hayes, for $5,000, for part of which the note in suit was given. Skidmore then returned to Ohio.' Furman went to South America and -disappears from the scene.
Hayes, after taking possession of the ranche, came back to Ohio for money to pay for his purchase, leaving a young man by the name of Horsely in charge of the place. Then Murphy returned from Illinois, where he had been, and, to .lis surprise, finds his property sold and delivered to an *333 other party. By successful diplomacy, he induces Horsely,, the young man in charge, to give up to him the farm, executing a paper purporting to release Hayes, the purchaser, from all obligation upon his notes. Horsely advises Hayes of what had occurred, and the latter, as it appears, never returned to California thereafter.
In the transaction of sale, Furman assumed to have authority from Murphy to act for him. This, however,. Mui-phy emphatically denies. There was certainly no-written authority, and the Court of Common Pleas charged that no such written authority was necessary. To this part of the charge Hayes objected, and asked the court to hold that the sale -was invalid without such authority in writing. This was refused, and error .is assigned. The question then is raised, whether authority to sell such an interest as this-was, must be an authority in writing.
The statute of California provides that “No estate or interest in lands,” other than certain leases, can be assigned,, unless “by deed or conveyance in writing, subscribed by the party, . . . or by his lawful agent, thereunto authorized in writing.” The same statute also provides that every contract “ for the sale of any lands, or any interest in lands, shall be void,” unless subscribed by the party or his agent lawfully authorized.
Whether the right these parties had to this ranche is “ land ” or an “ interest in lands,” must be determined for, if it was, the aut-hoiity from Murphy to Furman must have been in wilting in order to make the sale valid. The statute of California provides:
“ Sec. 25. The term ‘ lands,’ as used in this act, shall be-construed as co-extensive in meaning with lands, tenements, and hereditaments, and the terms ‘ estate and interests in lands,’ shall be construed to embrace every estate- and interest, present and future, vested and contingent, in lands, as above defined.”
The evidence shows that squatter’s rights, such as this-was, gave to the claimant a title as to 160 acres, good as against every body except the United States; and, upon *334 -compliance with the necessary conditions, this title, might be completed into a patent. Skidmore, in his own testimony, shows that he assumed to give a title good as to all -except the general government. These rights were accustomed to be passed by deed. The land-records show this fact, and such titles were recognized by the early settlers as good Against every body but the general government. They were subject to taxation and sold on execution, and “ were a vested interest in real estate,” according to the language ■■of witnesses. It therefore seems to us, that both by the law and custom of California such rights as this now under •consideration must be held to be an interest in real estate. If so, no agent could convey such interest except by authority in writing, and the court therefore erred in saying to the contrary.
It was claimed as a defense to this note that there had been a failure of consideration. It appears to us ihat the whole 640 acres was sold as an entirety, and that Hayes ■expected to obtain, as he bargained for, the whole quantity. We think the peculiar location of the land, .and all the circumstances of the case, show that this was the understanding on both sides; and the sellers undertook to sell the whole, even to the assumption of authority they did not possess. It is well settled that property being sold as an entire thing, if title to a material portion fails, this is such a failure of consideration as entitles the pur-chaser to an election. He may rescind the sale, or he may ■complete it, upon abatement of price or other terms satisfactory to both parties.
In the case before us, the 640 acres were owned by the •four parties, each owning 160 acres. Two of these owners .assumed to sell the whole. Furman sells Murphy’s interest, without any lawful authority so to do, as we have seen. Skidmore also sells Clark’s interest of one-fourth. But at the time of that sale, Clark was dead. Even then, if Skid-more had a lawful power of attorney to make the sale, it was revoked by the death of the principal. As, therefore, <the bargain and sale was for the whole, and but one-fourth *335 or one-half was really conveyed, the purchaser, Hayes, had the right to rescind, if he so chose. But the rescission must be prompt. The evidence shows that when Murphy went back to California, and found Horsely in possession, as agent of Hayes, and that his partners had sold him out, he repudiated the whole proceeding. In the negotiations which resulted in a surrender of the property to. him, he gave Horsely a paper purporting to release Hayes from the obligations of the purchase-money notes. Murphy testifies that he immediately wrote Skidmore what he had done, and that he sent him repeated letters upon the subject. Horsely at once wrote Hayes, with a letter from Murphy and the paper which was to cancel the notes. Both Hayes and Skidmore were then in Hamilton county, living but a few miles apart. Hpon receiving the Horsely and Murphy letters, Hayes went to see Skidmore, in company with Esq. Stevens. It is evident from Stevens’ statement that they had the letters from Murphy and Horsely and the receipt ■of cancellation, and that Skidmore saw, or might have seen, them. Hayes sought this interview for the purpose ■of informing Skidmore of what had been done, and to rescind the contract and get back his notes. That he rescinded as far as he could, is to us clear, though the notes were not returned. The probability is that Skidmore already knew what had been done in California after he left, for he nowhere denies having received Murphy’s letter, or letters, informing him of the facts.
"Without going into the evidence at length, as it is quite voluminous, we are satisfied that Hayes sought this interview for the purpose of rescinding this contract, as far as it was in his power to do so, and to obtain his notes. Indeed, he might well have thought the contract already rescinded by the opposite party. He had been advised that, under California law, Murphy had a right to do what was done, and to cancel the contract. He might have supposed that if one partner, joint owner, proprietor, or whatever they were, could assume, 'without authority, to act for the rest, any other might repudiate the transaction; and as *336 Murphy’s dissent broke the entirety of the sale, he was justified in considering the bargain already off, as it was-not violent in him to suppose that if one could act for all four, then Murphy’s receipt canceled the notes in Skid-more’s hands, as it purported to do.
The case may therefore be considered, in either light, as presenting itself to Hayes. That Murphy had rescinded in California or that he would in Ohio. At all events, Hayes was prompt in making it known to Skidmore that he was satisfied with the reseission.'if it had already been made; if not, that he himself threw up his bargain and wanted his notes.
That both Skidmore and Hayes considered the matter at an end, we think is shown by the fact, among others, that. Skidmore took no steps to enforce his rights for upward of fifteen years. The purchase-money for the ranche was $5,000 in two notes, $1,000 at six months, and $4,000 at twelve months. Skidmore allows the first note to be barred by the statute of limitations, and suit is brought on the second about thirty days before the time when it too would have been barred. Skidmore proposes to account for his non-action in the premises upon the ground that Hayes was pecuniarily worthless. It is strange that this discovery was not made before the property was sold, and notes to so large an amount taken without any cash payment. We-think it may be fairly inferred from the testimony that the-$1,000 note, at least, might have been made by a rigorous appliance of legal proceedings.
This note was overdue when Hayes and Stevens called on Skidmore to cancel. It does not appear that Skidmore then made any demand for its payment, or at all acted as though he thought it ought to be paid. Upon the contrary, he is given distinctly to understand that no such payment will be made. The issue being thus squarely" presented, the more natural course would have been an assertion of his rights, if he had any.
And, again, Skidmore was well aware that Hayes’ father was wealthy, and there was at least a possibility of an heir- *337 ship succeeding. Still, again, it is evident from Skidmore’s own statement that a part of the money, at least, might have been made out of the ranche in California, but no such steps are taken. This remissness impresses us strongly with the belief that Skidmore himself acquiesced in the transaction of rescission, if indeed such acquiescence is necessary to Hayes’ defense.
It has been said that the title failed, not only as to Murphy’s one-fourth by his repudiation, but also as to that of Clark, whose death had revoked any supposed power to sell given to Skidmore. To this it has been suggested that Clark’s administrator ratifies that sale. But ratification now comes too late. It is too late to ratify a transaction fifteen years after it took place, when it has been practically abandoned and rescinded by almost every one interested in it..
A ratification in 1869 could not go back to 1853, and make a title good at that date, which was invalid by reason of the death.
The sale, therefore, having been for an entirety, the title-to one-half or one-fourth having failed, the vendee having rescinded promptly, and the property having been returned to one of four, who seemed to proceed upon the supposition that the act of any one was the act of all, it seems to us-that a failure of consideration in the note is satisfactorily established.
The District Court, in their order, found that Murphy did not authorize the sale, and a remittitur was entered as. to. one-fourth. This sale having been of an entirety, when the court had found a failure of title to a sufficient extent to call for a remittitur, the same process of reasoning should have led to setting aside the transaction altogether. Upon such failure, Hayes had the right to elect what he would do, not Skidmore; and had the decree been that .Hayes-might have taken the residue of the tract, upon payment of three-fourths of the sum, there might have been no objection to this order; but, as it is, it appears to be inconsistent upon its face.
*338 Upon this question of failure of title and failure of consideration, we think the Court of Common Pleas were hardly specific enough in their charge to the jury. They seem to say that if Hayes bought the ranche as an entirety, and did not get any title at all, then there was a failure of •consideration, leaving it to be inferred that before failure ■of consideration is established, an entire failure of title must be shown. This was calculated to mislead. The rule is that when a whole tract of land is sold, if title fails to a material portion, that is ground for rescission. If the ■quantity is so small or unimportant as really not to affect the value of the property, the rule does not apply; but in a -case like this, where it is manifest that the amount is serious, the vendee may elect to cancel or to conclude the contract upon terms to be agreed.
It seems that Hayes did all he could, not only to rescind, hut to place the other parties in as good a position as they formerly were. Horsely, his agent in California, surrendered the ranche, with all its appurtenances and property, to Murphy, one of the parties, who assumed to act for all. It is not apparent that he could have done anything more.
It. is true that in a subsequent part of the charge the ■court says: “ Having purchased the entire property, and the’ obtaining the whole of it being the inducement, as soon .as he discovered that he had not a title to the whole of it, he could rescind the contract, but he must do it immedi.-ately.” Still, as this was perhaps the important point in the case, we do not think that it was made entirely clear what the rights of the parties were. It should have been put prominently before the jury that unless Hayes got all he bargained for he could not be bound; that if such portion of the property was not transferred as materially interfered with the value of his purchase, his right to rescind was complete.
The judgment below is reversed, and cause remanded for •further proceedings.
Scott, Chief Judge, Day, Johnson, and Ashburn, JJ., ■concurred.